**ELECTRONICALLY FILED**
2020 Nov 09 AM 8:58
CLERK OF THE WYANDOTTE COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000645

Tyrone Tyner

vs.

Probasco Law, P.A. f/k/a Probasco & Associates, P.A.

## SUMMONS

Received
NOV 2 3 2020
E. Lou Bjorgaard Probasco

To the above-named Defendant/Respondent:

> Probasco Law PA
> Serve Registered Agent
> E. Lou Bjorgaard Probasco
> 615 SW Topeka Blvd.
> Topeka, KS  66603

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Bryce B Bell
> Bell Law, LLC
> 2600 Grand Blvd., Ste. 580
> Kansas City, MO 64108

within 21 days after service of summons on you.



Kristi L. Hill

Clerk of the District Court
Electronically signed on 11/09/2020 10:35:02 AM

**Documents to be served with the Summons:**
PLE: Petition PETITION FOR DAMAGES

**EXHIBIT A**

ELECTRONICALLY FILED
2020 Nov 09 AM 8:58
CLERK OF THE WYANDOTTE COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000645

IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
CIVIL DIVISION

| | | |
|---|---|---|
| TYRONE D. TYNER, | ) | |
| | ) | |
| Plaintiff, | ) | Chapter 60 |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| PROBASCO LAW, P.A. | ) | Division |
| f/k/a/ PROBASCO & ASSOCIATES, | ) | |
| P.A. | ) | |
| SERVE: | ) | |
| E. Lou Bjorgaard Probasco | ) | |
| 615 SW Topeka Blvd. | ) | |
| Topeka, KS 66603 | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION FOR DAMAGES

COMES NOW, Plaintiff Tyrone D. Tyner ("Tyrone", "Tyner", or "Plaintiff"), and states and alleges as follows:

1. Defendant is a debt collector who abdicated its responsibility to adequately investigate the alleged debt, proceeding to take out a lien which was tens of thousands of dollars more than the alleged creditor was itself demanding in payment. This conduct is in violation of the Fair Debt Collection Practices Act ("FDCPA") and Kansas Consumer Protection Act ("KCPA").

### PARTIES

2. Tyrone is a Kansas resident and consumer.

3. Defendant Probasco Law, P.A. f/k/a/ Probasco & Associates, P.A. ("Probasco" or "Defendant") is a debt collection law firm located in Topeka, Kansas.

1

Defendant can be served by serving its registered agent, E. Lou Bjorgaard Probasco at 615 SW Topeka Blvd., Topeka, KS 66603.

## FACTS

4. In the late night of October 18, 2018 or early morning of October 19, 2018, Tyrone was injured in a vehicle accident while driving his motorcycle.

5. An ambulance took Tyrone to the University of Kansas Health System ("the Hospital")—which is located in Kansas—for medical treatment, and he was admitted there at approximately 12:46 am on October 19, 2018.

6. Tyrone was discharged from the Hospital at approximately 9:30 am on October 19, 2018.

7. During that brief stay, the Hospital opened a total of five accounts and charged a total of $40,305.16.[1]

8. These charges were allocated across the five accounts as follows:[2]

   a. Account -30:         $575.00

   b. Account -74:         $18.00

   c. Account -00:         $33.00

   d. Account -77:         $841.00

   e. Account -18:         $38,838.16

---

[1] The following is a history of the billings and adjustments the Hospital made to the five Accounts it opened in Tyner's name. This history is made without admission that these calculations are correct or that Tyner owes these sums, but rather to outline the history of the billings and showcase how wildly fictitious the representations made by Defendant were.

[2] The accounts are identified by the last two numbers in the account number.

9. Between October 19, 2018 and October 26, 2018, the Hospital applied its standard self-pay discount to each of these accounts, as reflected by the following table:

| Account # | Original Balance | Discount | New Balance |
|---|---|---|---|
| -30 | $575.00 | $230.00 | $345.00 |
| -74 | $18.00 | $7.20 | $10.80 |
| -00 | $33.00 | $13.20 | $19.80 |
| -77 | $841.00 | $336.40[3] | $504.60 |
| -18 | $38,838.16 | $27,186.71 | $11,651.45 |
| TOTAL | $40,305.16 | $27,773.51 | $12,531.65 |

10. On October 21, 2018, the Hospital sent Tyrone Tyner a bill seeking payment of $345. This bill listed only Account -30.

11. On November 20, 2018, the Hospital sent Tyner a bill seeking payment of $880.20. This bill listed each account except for Account -18.

12. The Hospital sent Tyner a substantively identical bill on December 20, 2018 and January 21, 2019.

13. On February 20, 2019, the Hospital sent Tyner a bill seeking payment of $535.20. This bill listed only Accounts -74 and -77.

14. At some point in early 2019, the Hospital hired non-party Consumer Collections Management, Inc. ("CCM") to attempt to collect on the alleged debt consisting of some—but not all—of these Accounts.

15. In February 2019, CCM sent Tyner a bill only as to Account -30, demanding payment of $345.

---

[3] This discount is itemized in the Hospital's statements as two separate line-items: $135.20 and $201.20.

16. The same day as that CCM letter, GEICO submitted its explanation of review for Accounts -30 and -18, indicating it would be paying the Hospital $1,130.97 and $3,369.03 for those accounts, respectively.

17. On March 11, 2019, GEICO sent the Hospital a check for $1,130.97. That check specified that it was to be applied to Account -30.

18. That payment exceeded the balance of Account -30 by $555.97 (before the self-pay discount) or $785.97 (after the self-pay discount).

19. The Hospital deposited that check on or about March 18, 2019.

20. The Hospital applied that check not to Account -30, but to Account -18.

21. On April 3, 2019, GEICO sent the Hospital a second check, this time in the amount of $3,369.03. This check specified that it was to be applied to Account -18.

22. The Hospital deposited that check on or about April 12, 2019, and applied it to Account -18.

23. On October 1, 2019, the Hospital filed a lawsuit against Tyrone in this Court, which was assigned the case number 2019-LM-004815. At the time of filing, Defendant did not represent the Hospital in that suit.

24. Before Tyrone's answer was due, he demanded validation of the alleged debt. In response, the Hospital (through its previous debt collector) provided Tyrone account statements for Accounts -30 and -77. Those two accounts, according to the Hospital, had a combined balance of $870.00. Neither of those statements, however, reflected GEICO's payment which was to have been applied to Account -30.

25. Accordingly, Tyrone demanded that lawsuit be withdrawn and, when it was not, filed a Counterclaim.

26. At some point on or around November 1, 2019, the Hospital retained Defendant to attempt to collect the alleged debt consisting of one or more of the Accounts.

27. On November 8, 2019, Defendant had a telephone call with Tyrone's counsel, Mark W. Schmitz. At no point did Tyrone's counsel give Defendant consent to contact him directly.

28. That same day, Defendant entered its appearance in that earlier-referenced lawsuit. Defendant has since withdrawn from that lawsuit.

29. Accordingly, Defendant had actual knowledge that Tyrone was represented by counsel with regards to the alleged debt.

30. On November 8, 2019, Defendant took out a Hospital Lien against Tyner in the amount of $35,208.16. That lien identifies only a single account: Account -18.

31. Despite having actual knowledge that Tyrone was represented by counsel with regards to the alleged debt, Defendant sent that Hospital Lien directly to Tyner.

32. Defendant also sent Tyrone a demanding payment from Tyner. That letter identified only a single account: Account -18, indicated there was a "Balance Due" of "$35,208.16," and asked Tyrone to provide "an estimate of when we can expect payment."

33. As noted above, however, even without the GEICO payments the Hospital had credited to Account -18, the Hospital was not actually seeking that amount from Tyrone.

34. For example, on or about March 24, 2019, the Hospital sent Tyrone a bill with respect to Account -18. That bill identified the "current total balance" on Account -18 as "$10,520.48." Further, that March 24, 2019 bill was also sent before GEICO's April 2019 payment of $3,369.03, which would further reduce the alleged balance on Account -18 to $7,151.45.

35. As noted above, the Hospital incorrectly applied GEICO's March 2019 payment—which should have gone to Account -30—to Account -18. Reversing that incorrect application would yield an alleged balance on Account -18 of approximately $8,282.42.

36. Thus, the Hospital Lien Defendant took out against Tyrone necessarily demanded payment in an amount far in excess of what Tyrone could possibly owe. In fact, the Hospital Lien demands payment of over *four times* the maximum amount Tyrone could possibly owe on Account -18.

37. Defendant knew, or should have known, that the Hospital Lien was egregious and improper.

38. The same day Defendant took out the Hospital Lien, Defendant also entered its appearance in a lawsuit the Hospital had filed against Tyrone. At that time, the Hospital was seeking payment from Tyrone for $870.00.

39. In response to Tyrone's demands for verification of debt, the Hospital—through its agent Bessine Walterbach, LLP—sent Tyrone documents on October 30, 2019 itemizing the services and charges for Accounts -30 and -77. Those statements alleged a "Current Account Balance" of $345.00 (Account -30) and $525.00 (Account -77).

40. Neither statement reflected any credit for GEICO's March 2019 payment. Thus, at the time, the Hospital had not corrected its accounting error.[4] As a result, whatever documents the Hospital may have provided to Defendant would have indicated an account balance on Account -18 of $7,151.45.

41. Simply put, there is no version of the Hospital's math and accounting which could support Defendant's conclusion that the Hospital Lien was proper.

## COUNT ONE:
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT

42. Tyrone incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

43. The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 et seq., prohibits the use of deceptive and/or unconscionable acts and practices in connection with consumer transactions in Kansas.

44. Tyrone is an individual who sought and/or acquired services (in the form of medical treatment) from the Hospital for personal purposes. He is therefore a "consumer" as that term is defined by K.S.A. § 50-624(b).

---

[4] Upon information and belief, the Hospital did not correct its account error until early 2020.

45. The Hospital is a seller and/or other person who, in the ordinary course of business, solicits, engages in, and/or enforces consumer transactions, typically dealing directly with the consumer (i.e. the patient). The Hospital is therefore a "supplier" as that term is defined by K.S.A. § 50-624(l).

46. The medical services the Hospital provided to Tyrone in October 2018 after the vehicle accident was the sale of services and occurred within the state of Kansas. The Hospital specifically performed many different tests, diagnostics, and/or procedures, separately billing Tyrone for each. Accordingly, the medical services are a "consumer transaction", as that term is defined by K.S.A. § 50-624(c).

47. Defendant is also "supplier" because it is in the business of enforcing consumer transactions.

48. In this case, Defendant sought to enforce the alleged debt arising out of the consumer transaction between the Hospital and Tyrone. Thus, Defendant's actions in this case were made "in connection with" that consumer transaction, as required by K.S.A. § 50-626(a) and § 50-627(a).

49. The KCPA is to be liberally construed to promote its policies of protecting consumers from suppliers that commit deceptive and unconscionable acts and practices. K.S.A. 50-623; *Williamson v. Amrani*, 283 Kan. 227, 237 (2007).

50. Defendant engaged in deceptive and unconscionable acts in of the Kansas Consumer Protection Act, including but not limited to, the following:

   a. Willfully making false representations as to material facts concerning the amount and status of the alleged debt, in violation of K.S.A. § 50-626(b)(2), by taking out a Hospital Lien for Account -18 in the amount of $35,208.16;

    b. Falsely stating, knowingly or with reason to know, that the Hospital was legally permitted to take out the Hospital Lien in the amount of $35,208.16, in violation of K.S.A. § 50-626(b)(8);

    c. Willfully making false representations as to material facts concerning the amount and status of the alleged debt, in violation of K.S.A. § 50-626(b)(2), by sending Tyrone a letter on November 8, 2019 asking for payment in the amount of $35,208.16;

    d. Falsely stating, knowingly or with reason to know, that Tyrone had an obligation to pay the Hospital $35,208.16 by way of the November 8, 2019 letter, in violation of K.S.A. § 50-626(b)(8); and,

    e. Taking advantage of Tyrone's inability to reasonably protect his interests because of his ignorance of the circumstances and law, in violation of K.S.A. § 50-627(b)(1).

51. Because the Hospital Lien far exceeds the maximum amount the Hospital could possibly collect from Tyrone even under the most Hospital-friendly math, the Hospital Lien encumbers Tyrone's rights, rendering him aggrieved.

52. Pursuant to K.S.A. § 50-634(b), Tyrone is entitled to recover the greater of his actual damages—which includes his garden variety emotional distress—or civil penalties in the amount of $10,000.00 for each violation.

53. Further, Tyrone is entitled to recover his reasonable attorneys' fees and costs in this action.

## COUNT TWO:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

54. Tyrone incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth herein.

9

55. Tyner's alleged debt arose out of medical services, which Plaintiff had performed for personal, family, and/or household purposes.

56. Defendant has alleged that Plaintiff owes an obligation to pay money for those medical services, as outlined more fully above.

57. Account -18 — the account which is referenced in the Hospital Lien taken out by Defendant — is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

58. Defendant is in the business of collecting debts.

59. In this instance, Defendant did in fact attempt to collect an alleged debt from Tyrone.

60. Thus, Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692(a)(6).

61. The Fair Debt Collection Practices Act prohibits Defendant from using false, deceptive, or misleading representations or means in connection with attempts to collect a debt. 15 U.S.C. § 1692e.

62. Defendant made false representations of the amount and legal status of Account -18, in violation of 15 U.S.C. § 1692e(2)(A) when it took out a hospital lien on behalf of the Hospital in the amount of $35,208.16.

63. Defendant contacted Tyrone directly after it had actual knowledge that Tyrone was represented by counsel, in violation of 15 U.S.C. § 1692c(a)(2).

64. Defendant's November 8, 2019 letter to Tyner demanding payment of over $35,000 violated 15 U.S.C. § 1692f(1) by attempting to collect an amount not authorized by the agreement creating the alleged debt or permitted by law.

10

65. As a result of these actions, Tyner has suffered garden variety emotional distress. Thus, Tyner has been damaged.

66. Pursuant to 15 U.S.C. § 1692k, Tyner is entitled to recover his actual damages, statutory damages in the amount of $1,000, and his costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

67. Tyrone requests that the Court enter relief and enter judgment against Defendant as follows:

   a. Declaring that Defendant committed the violations of the Kansas Consumer Protection Act outlined above;

   b. Declaring that Defendant committed the violations of the Fair Debt Collection Practices Act outlined above;

   c. Granting damages, statutory damages, and/or civil penalties to Tyrone;

   d. Granting pre- and post-judgment interest to Tyrone;

   e. Granting attorneys' fees and costs to Tyrone;

   f. Granting any such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

68. Tyrone hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Mark W. Schmitz
Bryce B. Bell          KS#20866
Mark W. Schmitz    KS#27538
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com
*Attorneys for Plaintiff*