UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYRONE D. TYNER,                )
                                )
            Plaintiff,          )
                                )
v.                              )   Case No.  20-cv-02632-EFM
                                )
PROBASCO LAW, P.A,              )
                                )
            Defendant.          )

## **MEMORANDUM AND ORDER**

This case is before the Court on Plaintiff's Motion to Compel Discovery (ECF No. 51). Plaintiff asks the Court to compel responses to his First Requests for Admission Nos. 6–23, his Second Interrogatory No. 6, and his Third Request for Production No. 5. All requests relate to one central issue: whether Defendant should be required to admit or deny, answer, and produce information relating to letters sent to others between 2017-2019 that are "substantially similar" to the letter Defendant sent to Plaintiff dated November 8, 2019.[1] Plaintiff claims the requested discovery is relevant to the determination of whether Defendant is a "debt collector" under the FDCPA. The Court finds the parties have conferred in attempts to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

**I.       Legal Standards**

Defendant objected to Plaintiff's requests on several grounds: (1) vague and ambiguous; (2) unduly burdensome; (3) overbroad in subject matter and temporal scope; (4) not proportional

---

[1] The letter represented that Plaintiff owed $35,208.16 as an outstanding hospital bill from a 2018 motorcycle accident.

to the needs of the case; (5) irrelevant; and (6) seeks to invade the privacy of non-parties. The Court first examines the legal standards governing these objections, and then applies them to the facts of this case.

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended in 2015, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[2]

Considerations of both relevance and proportionality now govern the scope of discovery.[3] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[4] Information still "need not be admissible in evidence to be discoverable."[5] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[6]

---

[2] Fed. R. Civ. P. 26(b)(1).
[3] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.
[4] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).
[5] Fed. R. Civ. P. 26(b)(1).
[6] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[7] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[8] Specifically, when the requested discovery appears relevant, the resisting party bears the burden to show that the at-issue discovery (1) falls outside Fed. R. Civ. P. 26(b)(1)'s definition of the scope of relevancy, or (2) has such marginal relevancy that potential harm resulting from discovery would outweigh the Rule's presumption of broad disclosure.[9] And when the discovery request's relevancy is not readily apparent on its face, the requesting party bears the burden to show relevancy.[10] Relevancy is generally determined on a case-by-case basis.[11]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[12] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[13] Objections that discovery is unduly burdensome "must contain a factual basis for

---

[7] *Id.*
[8] *Id.*
[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).
[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).
[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).
[12] *Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).
[13] *Id.*

3

2019, but for all such letters sent since/after 2019, is overbroad in temporal scope. Plaintiff has failed to demonstrate that such letters sent subsequent to 2019 are relevant to the issue of whether Defendant was a debt collector in 2019. In fact, Plaintiff conceded in his summary judgment briefing that such post-2019 letters are not relevant.[17] The nearly three-year time period predating the letter, however, is not overbroad.[18]

Third, the Court considers whether the requests are unduly burdensome and proportional to the needs of the case. These objections have merit.

In Defendant's responses to the eighteen Requests for Admissions, Defendant stated that it had made a reasonable inquiry as to its ability to answer the requests, but that it could not readily obtain the information needed to admit or deny the requests.[19] Defendant advised Plaintiff it would have to review potentially thousands of files to determine whether "substantially similar" letters were sent in 2017, 2018, and 2019.[20] Defendant's computer software, which is outdated, lacks the capability to isolate the files including a particular form letter.[21]

E. Lou Bjorgaard Probasco, who is Defendant's only attorney, submitted a Declaration with more details about what responding to Plaintiff's discovery requests would require. She explained that the law firm's two departments have received approximately 4,000 files a year

---

[17] *Cf.* ECF No. 74, Plaintiff's Opposition to Defendant's Summary Judgment Motion, at 8 ("Plaintiff also objects to the data as to 'new consumer debt collection accounts' from 2020 and 2021 as irrelevant. The issue is whether Defendant was a debt collector *in 2019*, not whether Defendant *currently* is a debt collector.") (emphasis in original).
[18] *See Garrett v. Sprint PCS*, No. 00-2583, 2002 WL 181364, at *2 (D. Kan. Jan. 31, 2002) (compelling discovery for three years prior to the time of the alleged discriminatory conduct).
[19] ECF No, 51-4 at 3–16.
[20] *Id.*
[21] *Id*.

during the relevant time period.²² Ms. Probasco has tried to identify a way to easily search Defendant's files to search for letters substantially similar to the one sent to Plaintiff.²³ She personally spent over fifteen hours reviewing some of Defendant's 2019 files for matters with hospital liens filed (which might or might not have resulted in a substantially similar letter being sent).²⁴ Ms. Probasco estimates that reviewing all of the files for the years requested would take at least fifteen hours per year.²⁵ To arrive at complete numbers, Ms. Probasco believes she would need to review files from years prior to 2017, and because Request for Production No. 6 requests any substantially similar letters sent to date, she would also have to review 2020 and 2021 files.²⁶ In total, this amounts to a manual review of at least 20,000 files and an estimate of at least seventy-five hours of work—possibly more.²⁷ Ms. Probasco represents that her office is short-staffed (and has been since the beginning of the pandemic), and that she does not have the manpower to dedicate this number of hours to responding to Plaintiff's discovery requests.²⁸

But the Court considers not only the burden of the disputed discovery on Defendant, but also whether this discovery is proportional to the needs and issues in the case. Thus, the burden to be imposed on Defendant must be considered in light of the potential benefits to be conferred upon Plaintiff by receiving the discovery. At this point in the litigation—after the discovery deadline has passed, after the case has been pre-tried, and after summary judgment has been

---

²² ECF No. 59-2 at 4.
²³ *Id.*
²⁴ *Id.*
²⁵ *Id.* at 4–5.
²⁶ *Id.* at 5.
²⁷ If the Court were to exclude files from 2020 and 2021, it would still result in a manual review of at least 12,000 files and an estimated forty-five-plus hours of work.
²⁸ ECF No. 59-2 at 5.

briefed—the potential benefit is slight.[29] Plaintiff has already thoroughly briefed the "debt collector" issue in support of his own motion for partial summary judgment,[30] as well as in his response to Defendant's motion for summary judgment.[31] Plaintiff's briefing demonstrates that Plaintiff has already obtained through Defendant's answers to interrogatories and the Declaration of Ms. Probasco information relevant to the question of whether Defendant is a debt collector. Indeed, based upon the information he has already obtained through discovery, Plaintiff has asserted that Defendant "clearly foots the bill" as a debt collector,[32] that the "debt collector" issue is settled, and needs no further discussion.[33] Based upon these considerations, the Court finds the disputed discovery relevant to the question of whether Defendant is a debt collector has in large part already has been obtained from other sources that are more convenient, less burdensome, and/or less expensive. The potential benefit from the disputed discovery that Plaintiff seeks would be slight. Therefore, pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i), the Court must limit the discovery allowed.[34]

    The Court finds that Ms. Probasco has sufficiently supported her claim that responding to

---

[29] Plaintiff filed his motion after the Court conducted the pretrial conference (without noting that a motion might be forthcoming) and six days before summary judgment briefs were due. The motion was referred to the undersigned judge two days later. At the end of Plaintiff's motion, Plaintiff requested expedited briefing. ECF No. 51 at 6. This Court did not notice Plaintiff's request until after the summary judgment deadline.
[30] ECF No. 62 at 28–30.
[31] ECF No. 74 at 42–43.
[32] ECF No. 62 at 29.
[33] ECF No. 71, Plaintiff's Reply in Support of His Partial Motion for Summary Judgment, at 25 ("We will not spill more ink on the question of whether Defendant is a 'debt collector'—clearly it is.")
[34] It is also significant to the Court that Plaintiff did not request this particular discovery until thirty days before the discovery deadline. ECF No. 42. It seems that if the information were as critical to Plaintiff's case as Plaintiff claims, he might have explored the issue during the preceding seven months allowed for discovery.

the discovery requests would be unduly burdensome and disproportional to the needs of the case. Given the number of files involved, Defendant's lack of updated computer software, and Defendant's staffing shortages, Defendant has shown that the burden or expense is unreasonable in light of the benefits to be secured from the discovery—despite the discovery's relevance.

The Court need not consider Defendant's third argument about privacy concerns as it is moot.

IT IS THEREFORE BY THE COURT ORDERED that Plaintiff's Motion to Compel Discovery (ECF No. 51) is denied.

IT IS SO ORDERED.

Dated January 18, 2022, at Kansas City, Kansas.

_Teresa J. James_
Teresa J. James
U.S. Magistrate Judge